UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NEDRA JOHNSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> METROPOLITAN LIFE INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) <br> _____) | Case No. 23-cv-9045 <br><br> Hon. Steven C. Seeger |

## MEMORANDUM OPINION AND ORDER

Decades ago, James Johnson, Jr. obtained a life insurance policy as a federal employee. He completed a form and designated his then-wife and daughter as beneficiaries in 1983. He later divorced, and then married Plaintiff Nedra Johnson. They enjoyed two decades of marriage before he passed away in 2022.

Nedra Johnson (the second wife) submitted a claim for benefits under the insurance policy. But she didn't claim that she was entitled to benefits based on her status as the decedent's spouse. Instead, she asserted a right to benefits as the designated beneficiary under a form that the decedent completed in 2002.

Metropolitan Life Insurance Company took a look at the form, and spotted a few problems. First and foremost, the decedent didn't sign it. The section entitled "Statement of Insured" was blank, with no signature. To compound the problem, the form lacked signatures from two witnesses. The form didn't show any indication of receipt by the agency, either.

So MetLife denied the claim. MetLife decided that the benefits should go to the decedent's former wife and daughter, even though the decedent and his first wife divorced

decades ago. Basically, MetLife decided that the original form from 1983 still governed – despite the divorce – because the decedent never completed a new form that complied with the statutory requirements.

Mrs. Johnson responded by filing suit, claiming breach of contract. She asks this Court to declare that the denial of benefits is inequitable. MetLife, in turn, moved to dismiss.

In the Federal Employees' Group Life Insurance Act, Congress created a scheme for deciding who is entitled to the proceeds of insurance policies for federal workers. Based on the statutory text, this Court has no room to reshuffle who is the rightful recipient based on the equities. The designation form in question does not meet the requirements for a beneficiary designation form. So Mrs. Johnson has no claim.

For the following reasons, this Court grants MetLife's motion to dismiss.

## Background

James Johnson, Jr. took out a life insurance policy forty years ago. *See* Cplt., at ¶ 8 (Dckt. No. 1-2). He worked for the federal government. *Id.* at ¶ 2. The complaint does not tell the backstory, but his designation form says that he worked at O'Hare. Based on supplemental submissions, he was a mail carrier for the U.S. Postal Service.

As a federal employee, Mr. Johnson signed up for a policy issued by Metropolitan Life Insurance Company in conjunction with the Office of Federal Employees' Group Life Insurance. *Id.* (More on that later.)

At the time, Mr. Johnson was married to his first wife (she is not the plaintiff). *Id.* at ¶ 8. He designated her and their daughter as beneficiaries, with each getting a 50% share. *Id.* But Mr. Johnson and his first wife divorced. *Id.* at ¶ 9.

Mr. Johnson later remarried. He tied the knot with Plaintiff Nedra Johnson ("Mrs. Johnson") in 2001. *Id.* The couple enjoyed two decades of marriage. *Id.* at ¶¶ 5, 9.

Early in their marriage, Mr. Johnson filled out a new life insurance beneficiary form, listing Mrs. Johnson (meaning the plaintiff here) as the sole beneficiary. *Id.* at ¶ 10.

According to the complaint, MetLife "accepted" the new designation. *Id.* at ¶ 11. It did not raise any issues about "any alleged defects in the designation." *Id.*

Mr. Johnson unfortunately passed away in 2022. Mrs. Johnson, in turn, submitted a claim for benefits under the policy. *Id.* at ¶ 12.

MetLife refused the claim. The insurer responded that the designation "was incomplete and thus invalid." *Id.*

That revelation came as a shock to Mrs. Johnson. *Id.* at ¶¶ 12–13. She believed that she was the beneficiary throughout her decades-long marriage. *Id.* And she was counting on the life insurance benefits.

Mrs. Johnson alleges that the denial of benefits is "extremely prejudicial." *Id.* She "proceeded for 20 years with her husband in the belief that the life insurance policy named her as 100% beneficiary." *Id.*

Mrs. Johnson responded by filing suit in state court, which MetLife later removed to federal court. The complaint contains two counts.

The first count is a breach of contract claim. *Id.* at ¶¶ 1–17. The complaint alleges that MetLife breached its obligations under the insurance policy by refusing to pay the $130,000 death benefit. *Id.* at ¶¶ 3, 17.

The complaint alleges estoppel. As Mrs. Johnson sees it, MetLife should be "estopped from asserting that the designation was invalid," because it "accepted" the paperwork and did not tell her that it was "incomplete." *Id.* at ¶ 13.

The second count invokes section 155 of the Illinois Insurance Code. *Id.* at ¶ 18. That provision authorizes district courts to award attorney's fees and other costs if an insurance company vexatiously delayed settling a claim. *See* 215 ILCS 5/155(1).

MetLife moved to dismiss for failure to state a claim. *See* Mtn. to Dismiss (Dckt. No. 10). MetLife attached a copy of the 2002 beneficiary designation form to its motion to dismiss. *See* 2002 Designation Form (Dckt. No. 11-2).

The handwritten form identifies the insured as James Tallie Johnson Jr. It names only one beneficiary: Nedra C. Johnson, his "wife." *Id.*

But the form was not signed. There is no signature by Mr. Johnson. In fact, the entire section entitled "Statement of Insured or Assignee" is blank.

The section about witnesses is incomplete, too. It includes only a few letters for the name of one witness. There is no address for that witness. There is no signature or address for a second witness, either.

The bottom of the form includes a section entitled "For Agency Use Only." It includes boxes for the agency to confirm receipt, covering "Receiving agency," "Date of receipt," "Signature of authorized agency official," and "Title." It's blank.

The top left of the form has highlighted text in the upper left corner, apparently reflecting the decision by MetLife. It reads: "invalid." And then: "not signed, witnessed, or recieved [sic]."

The parties filed only one version of the beneficiary designation form, meaning the incomplete form from 2002. MetLife submitted a copy of the form, and Nedra Johnson did not respond with a copy of her own. As things stand, there is only one form on the table, and it is unsigned and incomplete.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

## Analysis

Under Illinois law, a breach of contract claim has four elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff."[1] *See Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 522 (7th Cir. 2022).

---

[1] The Court assumes that Illinois law applies, but the parties did not address the choice-of-law issue. No party argues that applying the law of another state would make a difference. And here, the element is pretty basic: a breach of contract claim requires a breach.

5

The issue at hand is whether the complaint has stated a claim that MetLife breached a contractual obligation to pay benefits to Mrs. Johnson. *See* Cplt., at ¶ 17 (Dckt. No. 1-2). To answer that question, this Court needs to back up and survey the regulatory landscape.

The policy in question appears against the backdrop of a federal statute, and that backdrop sheds light on the outcome of the dispute. So, before digging into the argument, this Court will start with an overview of the Federal Employees' Group Life Insurance Act.

## I.   The Federal Employees' Group Life Insurance Act

In 1954, Congress established a life insurance program for federal employees by passing the Federal Employees' Group Life Insurance Act (also called "FEGLIA"). *See Hillman v. Maretta*, 569 U.S. 483, 485–86 (2013). The Office of Personnel Management administers the program. *Id.* at 486.

OPM "entered into a life insurance contract with the Metropolitan Life Insurance Company." *Id.* "Individual employees enrolled in the Federal Employees' Group Life Insurance (FEGLI) Program receive coverage through this contract." *Id.* MetLife must process claims in accordance with the Act. *See* Program Contract, at 9 of 97 (Dckt. No. 11-1).[2]

In the Act, Congress dictated how insurance companies must pay federal life insurance benefits. *See Hillman*, 569 U.S. at 486. And in particular, Congress created a pecking order for

---

[2] In a footnote, Mrs. Johnson seems to argue that this Court should not consider the contract between MetLife and OPM at the motion-to-dismiss stage. *See* Pl.'s Resp., at 6 n.1 (Dckt. No. 14). But Mrs. Johnson asserts a breach of contract claim under that contract. After all, MetLife is the contractor "providing life insurance benefits under contract, as specified by 5 U.S.C. chapter 87." *See* Program Contract, at 7 of 97 (Dckt. No. 11-1); *see also Rolon v. Metro. Life Ins. Co.*, 2022 WL 35609, at *1 (E.D. Pa. 2022) ("[C]ontracting insurance companies are responsible for administering insurance claims brought under the FEGLI Program in accordance with the requirements and conditions of FEGLIA, the OPM's regulations[,] and the FEGLI Contract."). A district court can consider the contract when faced with a motion to dismiss a breach of contract claim. A defendant "may supply documents mentioned" in a complaint "without converting" a motion to dismiss into a summary judgment motion. *See Re v. Real Estate Lawyers Grp., P.C.*, 509 F. App'x 541, 543 (7th Cir. 2013) (summarizing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)).

potential beneficiaries. The statute creates a distribution scheme by putting people into categories. If anyone is eligible in the first category, then that person gets the proceeds. If not, then the second category is up to bat, and so on.

The basic idea is that the insurer must pay a person in Category A, but if there is no person in that category, then the insurer must pay a person in Category B. And if there is no one in Category B, then the insurer must pay a person in Category C. And so on.

The statutory text makes clear that the priority scheme is mandatory, not optional. The statute provides that "the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence." *See* 5 U.S.C. § 8705(a). Benefits "shall be paid" in the "following order of precedence," but only on the "establishment of a valid claim." *Id.*

The top spot at the front of the line goes to the "designated beneficiary." *Id.* The statute provides that the first order of precedence is the "beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office." *Id.*

Notice that last clause. It is stuffed with requirements. The employee must designate the beneficiary "in a signed and witnessed writing." *Id.* And the writing must be "received before death in the employing office." *Id.* Not every attempt to designate a beneficiary successfully catapults that person to the top of the list.

To have a "valid claim," a beneficiary must check all of those proverbial boxes. *Id.* The designation must be in "writing." *Id.* It must be "signed," "witnessed," and "received" before the decedent passes away. *Id.* In effect, the designation must be signed, sealed, and delivered.

The Code of Federal Regulations reinforces this requirement. "A designation of beneficiary must be in writing, signed by the insured individual, and witnessed and signed by 2 people." *See* 5 C.F.R. § 870.802(b).

A designation counts for nothing unless it satisfies all of the statutory requirements. An improperly executed designation "has no force or effect." *See* 5 U.S.C. § 8705(a); *see also* 5 C.F.R. § 870.802(c) ("A designation, change, or cancellation of beneficiary in a will or any other document not witnessed and filed as required by this section has no legal effect with respect to benefits under this chapter.").

If there is no designated beneficiary, then the family of the decedent comes next in line. Specifically, the spouse has the second seat at the table (if there is no designated beneficiary), and then the children. *See* 5 U.S.C. § 8705(a) ("Second, if there is no designated beneficiary, to the widow or widower of the employee. Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation."). And then, the parents are next in line, followed by the executor or administrator of the estate, and so on. *Id.*

For present purposes, it is important to notice that a designated beneficiary has the top priority, even if the decedent was married to someone else at the time of his passing. That's why Mr. Johnson's first wife could get priority over Mrs. Johnson, despite the divorce. The fact that Mrs. Johnson was married to Mr. Johnson at the time of his passing wouldn't matter. If Mr. Johnson named his first wife and their daughter as the beneficiaries, and if he did not complete a new form that named Mrs. Johnson as the new beneficiary, then the first wife and their daughter will get the proceeds.

The text doesn't have a lot of wiggle room. The verb choice shows that Congress meant business. The benefits "shall be paid" based on the order of precedence created by statute. *Id.*

"Shall" is the quintessential word for a mandatory rule. *See, e.g.*, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall[]' . . . normally creates an obligation impervious to judicial discretion."); *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) ("[T]he word 'shall' usually connotes a requirement.").

Congress has tightened the statutory text over the years to solidify the requirements.[3] As things stand, the Act's "order of precedence is written in mandatory" terms. *See Metro. Life Ins. Co. v. Christ*, 979 F.2d 575, 578 (7th Cir. 1992). The rule is "inflexible" – the beneficiary "designated in accordance with the statute" gets paid. *Id.* at 578–79 (cleaned up).

Some statutes give district courts discretion. Sometimes a statute will use the word "may." *See Biden v. Texas*, 597 U.S. 785, 802 (2022) ("The statute says 'may.' And 'may' does not just suggest discretion, it '*clearly* connotes' it.") (emphasis in original). And sometimes a statute will include other language that vests district courts with an opening to reach a fair outcome. But this statute isn't one of those statutes. Congress created a scheme, and did not vest district courts with the power to tinker with it.

Congress created an order of priority in FEGLIA, and "equities" aren't part of the equation. *See Christ*, 979 F.2d at 579. Broader considerations about fairness do not decide who gets life insurance money. *See, e.g.*, *Hightower v. Kirksey*, 157 F.3d 528, 531 (7th Cir. 1998) ("Congress made clear its aim to preclude equitable exceptions[.]"); *Metro. Life Ins. Co. v. Holland*, 134 F. Supp. 2d 1197, 1202 (D. Or. 2001) ("[W]hile the court is sympathetic to [the plaintiff's] equitable argument, under FEGLIA, the equities are neither relevant nor

---

[3] Indeed, Congress tightened the rules in 1966. Before then, Congress did not "specifically require that insurance policies issued to federal employees covered by FEGLIA be signed and witnessed." *See Hightower v. Kirksey*, 157 F.3d 528, 530 (7th Cir. 1998). So, judges in that era "exhibited a willingness to validate designation forms that had technical faults[.]" *Id.* Congress slammed the door shut on those judicially-created, fairness-focused exercises when it spoke in section 8705(a). *Id.* at 530–31.

determinative on the issue of who is entitled to FEGLI life insurance proceeds."). The statute contains no equitable safety valve.

A bright-line rule might lead to inequitable results in some cases. But on the flipside, a bright-line rule has some advantages, too. A bright-line rule creates finality and clarity. It leads to an efficient distribution of benefits, with less room for disputes about who gets a piece of the pie. And it avoids the spectacle of putting courts in the middle of deciding what the decedent really wanted, and what's fair.

Requiring a signature by the decedent ensures that the decedent had made a final decision, and was not merely thinking it over. A signature is the statutory equivalent of "Final Answer." And requiring the signature of witnesses ensures finality, avoids fraud and misunderstandings, and creates an air of legitimacy and solemnity. All together, the signatures ensure that the decedent really did want the benefits to go to a specific person.

At the end of the day, it was up to Congress to decide a preference scheme. And it was up to Congress to decide whether to give courts the power to change the scheme based on a perception of fairness. But here, Congress closed the door on any arguments about fairness. The preference scheme is what it is, and courts "shall" follow it.

## II. Johnson's Breach of Contract Claim

That statutory framework provides the backdrop for the claim by Mrs. Johnson. She claims that she is the rightful recipient of the funds because the Mr. Johnson intended her to receive the benefits.

MetLife responds with a simple point: the designation form in question does not satisfy the statutory requirements. *See* 2002 Designation Form (Dckt. No. 11-2).

10

This Court took a look at the Mr. Johnson designation form. *Id.* And sure enough, he did not sign it. His signature is missing.

The designation form also lacks signatures by two witnesses. By the look of things, the form was signed by one, and only one, witness (at best). The signature is a fragment of part of a name. It looks like "Phy," without more. That witness did not include his or her address, either. It's hard to tell who signed it.

In her brief, Mrs. Johnson did not argue that the decedent did, in fact, sign the form. And she did not contend that two witnesses signed the form, either.

Instead, Mrs. Johnson asks this Court to put on a pair of procedural blinders. She argues that the beneficiary designation form is out of bounds at the motion-to-dismiss stage. *See* Pl.'s Resp., at 3 (Dckt. No. 14). Indeed, Mrs. Johnson spent all five pages of the argument section in her response brief urging this Court to ignore the form, without offering any other response. *See id.* at 3–7.

There is nothing wrong with considering the designation form at the motion-to-dismiss stage. The complaint itself puts the designation form in play. The complaint alleges that the decedent "filled out a new life insurance beneficiary form, listing Plaintiff as 100% beneficiary." *See* Cplt., at ¶ 10 (Dckt. No. 1-2). The next paragraph refers to the "2002 beneficiary designation form," too. *Id.* at ¶ 11.

If anything, the designation form is at the center of the case. Mrs. Johnson's entire claim rests on the notion that the decedent completed that form and picked her as the beneficiary. The complaint relies on the form, so the form is fair game on a motion to dismiss. *See Brownmark Films*, 682 F.3d at 690 ("[I]f a plaintiff mentions a document in his complaint, the defendant may

11

then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

Next, Mrs. Johnson invokes principles of fairness. As she sees things, it is inequitable and unfair for MetLife to refuse to pay the claim. *See* Cplt., at ¶ 13 (Dckt. No. 1-2) ("[MetLife] should be estopped from asserting that the designation was invalid."); *id.* at ¶ 12 ("[MetLife] took the position that the 2002 designation was incomplete and thus invalid. Doing so was extremely prejudicial to [Mrs. Johnson].").

An equitable argument isn't a thing under FEGLIA. The statutory scheme is mandatory, with no room for courts to pick winners and losers based on fairness.

The briefing on this issue was lopsided. In the motion to dismiss, MetLife argued that equitable considerations are off limits. As the insurer sees things, Mrs. Johnson "cannot invoke equitable doctrines such as estoppel to nullify FEGLIA's mandatory statutory and regulatory requirements for naming beneficiaries of federal benefits." *See* Def.'s Mem., at 10 (Dckt. No. 11).

Mrs. Johnson did not respond. *See* Pl.'s Resp, at 3–7 (Dckt. No. 14). So, she waived any response. *See Rosen v. Mystery Method, Inc.*, 2008 WL 723331, at *6 (N.D. Ill. 2008) ("A litigant's failure to respond to arguments the opposing party raises in a motion to dismiss operates as a waiver or forfeiture.").

Mrs. Johnson put forward another argument in her complaint (but not in her response brief). She contends that, under Illinois law, the original designation of the decedent's first wife was automatically revoked when the two divorced. *See* Cplt., at ¶ 14 (Dckt. No. 1-2) (citing 750 ILCS 5/503(b-5)). As she sees things, the divorce cut the marital cord, and cut off any right to benefits, too.

12

But that's not what the statute says. In fact, the Illinois statute expressly states that it does *not* apply to insurance policies under FEGLIA. *See* 750 Ill Comp. Stat. Ann. 5/503(b-5)(5) ("The provisions . . . do not apply to life insurance policies subject to regulation under the . . . Federal Employee Group Life Insurance Act[.]"). Indeed, the Illinois statute seems to recognize that FEGLIA "preempts" it. *See id.*

As her final argument, Mrs. Johnson calls into question the authenticity of the beneficiary designation form attached to MetLife's brief. *See* Pl.'s Resp., at 4 (Dckt. No. 14). She says that MetLife's form was "unauthenticated, unverified, and redacted."[4] *Id.* at 2.

MetLife attached the beneficiary designation form to its motion to dismiss, and Mrs. Johnson attached nothing in response. Mrs. Johnson didn't file the beneficiary form with the complaint, either. So, only one copy of the form is on the table.

Even so, this Court wanted to get to the bottom of the issue, sooner rather than later. MetLife didn't explain how it got the form. So, this Court ordered supplemental submissions from the parties. *See* 4/15/24 Order (Dckt. No. 20).

In particular, this Court wanted to know whether Mrs. Johnson had a copy of the form herself, and if so, whether her copy showed signatures by the decedent and two witnesses. *Id.* On the flipside, this Court wanted MetLife to explain the provenance of the form that it filed with the motion to dismiss. *Id.* This Court wanted to know where MetLife got the form, and whether any other forms might be out there. *Id.*

As directed, the parties made supplemental submissions.

---

[4] There is nothing wrong with making redactions for personal information – in fact, the Federal Rules require it. *See* Fed. R. Civ. P. 5.2(a).

13

Mrs. Johnson responded by filing an affidavit. *See* Pl.'s Supp. (Dckt. No. 21); Johnson Aff., at ¶ 1 (Dckt. No. 21-1). That affidavit offered new details about the creation of the beneficiary form.

Mrs. Johnson explained that she "saw James sign a beneficiary designation making [her] his 100% beneficiary in 2002." *See* Johnson Aff., at ¶ 3. She "knew the beneficiary designation existed" because she "accompanied James when he completed the form." *Id.* at ¶ 2.

Still, Mrs. Johnson acknowledged that she doesn't have a copy. *Id.* at ¶ 1 ("Prior to James Johnson, Jr.'s death, I did not have a copy of the beneficiary designation which named me as the 100% beneficiary."). She explained that neither one of them received a copy of the form "when it was completed in 2002." *Id.* at ¶ 2.

MetLife's submission also filled in the gaps. *See* Def.'s Supp. (Dckt. No. 23). It offered the declaration of Jerel Robertson – an Associate Manager for the Office of the Federal Employees' Group Life Insurance at MetLife. *See* Robertson Decl., at ¶ 2 (Dckt. No. 23-1).

According to Robertson, the Office of the Federal Employees' Group Life Insurance is a unit of MetLife that administers FEGLIA benefits. *Id.* at ¶ 3. The office "does not become involved in FEGLIA coverage" until after the insured's death. *Id.* at ¶ 4. The office receives documents from the Office of Personnel Management after the insured passes away. *Id.* at ¶ 5.

So, the office received documents from OPM to administer Mr. Johnson's life insurance when he died. *Id.* at ¶ 7. It received two beneficiary designations for the decedent. *Id.* at ¶ 13. One form involved the first wife, and the other form involved the second wife (Mrs. Johnson).

14

MetLife attached the two forms to its supplemental submission. In the 1983 designation form, the decedent named his then-current wife (meaning his first wife) as the beneficiary. *Id.* In the 2002 designation form, the decedent named Mrs. Johnson as the beneficiary. *Id.*

The 1983 designation form included a signature by the decedent, as well as the signatures of two witnesses. *See* 1983 Designation Form (Dckt. No. 23-1, at 7 of 24). The designation form included a stamp by the receiving agency, showing that it was "RECEIVED" by the "PERSONNEL OFFICE" on a specific date.

But the 2002 designation form was incomplete. *See* 2002 Designation Form (Dckt. No. 23-1, at 5 of 24). Again, the 2002 form lacked a signature by the decedent. *Id.* It included only three letters for one witness ("Phy"), without providing the full name or the address of that person. There was no signature by a second witness. *Id.* And there was no indication that the agency ever received it.

The supplemental submissions helped to shed light on the backstory of the form. But at the end of the day, they do not change the outcome.

As things stand, this Court has no reason to believe that a form exists that complies with all of the requirements of the statute. Mrs. Johnson's affidavit got part way there, but *only* part way there. She didn't say that two witnesses signed the form. And she didn't say that the agency received the form with all of the necessary signatures.

Mrs. Johnson's theory of the case is legally infirm. She asks this Court to overlook the fact that the form was incomplete, based on fairness and estoppel. Mrs. Johnson alleges that MetLife should be estopped from denying coverage based on the form's missing signatures. *See* Cplt., at ¶ 13 (Dckt. No. 1-2). That's not a viable claim under the statute.

15

The only possible claim is an allegation that the decedent did, in fact, satisfy all of the requirements of the statute. That is, the only possible route is a claim that (1) the decedent signed the form; (2) two witnesses signed it; and (3) the agency received it. But that's not what Mrs. Johnson alleges. Instead, she alleges the opposite – she asks the Court to overlook the fact that the form does *not* comply with the statute.

If Mrs. Johnson has a good faith basis to believe that the decedent did, in fact, satisfy all of the requirements of the statute, then she can file an amended complaint. Alleging that the decedent signed the form wouldn't be enough. Mrs. Johnson would need to allege that the decedent checked all of the boxes (so to speak).

In sum, Mrs. Johnson has no claim to benefits under the 2002 beneficiary designation form. The form does not comply with the federal statute. Equitable considerations cannot save the day, and neither can state law. If she has a good faith basis under the Federal Rules, then Mrs. Johnson can file an amended complaint within two weeks.

Again, that theory would sit uncomfortably with the theory unveiled in the original complaint. That pleading alleged that MetLife should be estopped from denying coverage based on the fact that the form was unsigned and incomplete. That's hard to square with a theory that the form was, in fact, signed and complete. So counsel would need to ensure that there is a good faith basis under the Federal Rules before shifting gears and going that route.

In the meantime, the claim cannot survive. As framed, the claim is legally infirm, and cannot get off the ground.

### III.  Section 155 of the Illinois Insurance Code

Mrs. Johnson's request for attorney's fees under section 155 of the Illinois Insurance Code also fails.

16

The statute authorizes a fee award when an insurance company's conduct is "vexatious and unreasonable." *See* 215 ILCS 5/155(1). But an insurer does not act vexatiously or unreasonably when it denies coverage "based on a position that prevails." *See PQ Corp. v. Lexington Ins. Co.*, 860 F.3d 1026, 1038 (7th Cir. 2017). MetLife prevailed.[5]

\* \* \*

Strictly speaking, the case is about benefits under a life insurance policy. But on a more important level, the case is about the loss of a person, and the consequences that followed.

This Court is duty-bound to apply the law as squarely as it can, and that duty led this Court to grant the motion to dismiss. The ruling does not change a simple reality: Mrs. Johnson suffered a terrible loss. This Court expresses its sincere sympathies to Mrs. Johnson for the loss of her husband.

This Court fully understands the shock created by the denial of the claim, which compounds the loss of her husband. But the statute creates a preference scheme, and this Court has no room to maneuver to a different outcome, even if the equities are on Mrs. Johnson's side.

## Conclusion

For the reasons stated above, this Court grants MetLife's motion to dismiss.

Date: April 29, 2024

Steven C. Seeger
United States District Judge

---

[5] This Court acknowledges that MetLife also argued that Mrs. Johnson's request for fees should fail because section 155 is preempted by FEGLIA. *See* Def.'s Mem., at 14–15 (Dckt. No. 11). This Court sees no reason to consider the issue.